IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SOLOMON S. HOE III,<br><br>Plaintiff,<br><br>vs.<br><br>CITY AND COUNTY OF HONOLULU, HONOLULU POLICE DEPARTMENT, JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10; DOE GOVERNMENTAL AGENCIES 1-10,<br><br>Defendants. | ) | CV. NO. 05-00602 DAE LEK |

ORDER DISMISSING PLAINTIFF'S § 1983 CLAIM WITH LEAVE TO AMEND; DISMISSING PLAINTIFF'S ASSAULT AND BATTERY CLAIM WITHOUT PREJUDICE; AND GRANTING SUMMARY JUDGMENT ON PUNITIVE DAMAGES AGAINST THE NAMED DEFENDANTS

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for disposition without a hearing. After reviewing the motion and the supporting and opposing memoranda, the Court DISMISSES Plaintiff's § 1983 claim WITH LEAVE TO AMEND his complaint within 30 days of the dismissal; DISMISSES Plaintiff's claim of assault and battery WITHOUT PREJUDICE; and GRANTS

summary judgment for punitive damages against the County and City of Honolulu and the HPD, but not to the individual officer or officers once named.

## BACKGROUND

On September 20, 2003, Officer Boyce A. Sugai of the Honolulu Police Department ("HPD") observed Plaintiff urinating in an open area, i.e., Ala Moana Beach Park, with approximately 100 people in the area. (Defendants Ex. B; Decl. Sugai ¶ 23.) After stopping, questioning, and running a warrant check under his name, Plaintiff was arrested on an outstanding warrant for gambling offenses. (Def. Ex. C.) Plaintiff was handcuffed and transported to the Central Police Station at 801 South Beretania Street in Honolulu, Hawaii, which was about 5 minutes away. (Decl. of Sugai ¶ 33; Def. Ex. F.) Once in the back seat of the patrol car, Plaintiff complained that the handcuffs were "a little bit tight" or "kind of tight." (Plaintiff's Deposition p. 29-30.) At that point, according to Plaintiff, Officer Sugai checked the handcuffs by placing his finger in between the cuff and his wrist on "both sides," and Officer Sugai told Plaintiff that "it was okay" and that it was "a short ride" to the police station. (Id.) According to Plaintiff, Officer Sugai also allegedly said that if he were to take Plaintiff to the hospital, it would take him "longer to get out of jail," which Plaintiff "brushed [] off a little" because it sounded like intimidation. (Id. at 29-30, 68.) At some point, an officer may

have asked Plaintiff about health problems, to which he indicated that he had no health problems. (Id. at 37.) Plaintiff did not complain about any injuries in his holding cell. (Id. at 38.)

According to Officer Sugai's declaration, he does not recall Plaintiff making any complaints to him about the handcuffs when they were placed on him, and, if Plaintiff had made such complaints, he would have remembered them. (Decl. of Sugai ¶¶ 28-29.) Officer Sugai attended the HPD Training Academy ("Academy") in Waipahu between December 2000 and June 2001. (Id. ¶ 3.) During his training, he was instructed not to use excessive force on any individual and to respect the constitutional rights of suspects and arrestees; to follow departmental directives, policies and procedures, and his supervisor's directions; and how to apply handcuffs properly. (Id. ¶¶ 4-6.) Additionally, Officer Sugai was taught to ask subjects whether they believed the handcuffs were too tight and to look at them to see whether they appeared too tight. (Id. ¶ 7.) He also was instructed to use his fingers to ensure that there was sufficient space between the handcuffs and the subject's wrists, and he was trained to double-lock the handcuffs so that the suspect does not over-tighten them. (Id. ¶¶ 8-9.) Officer Sugai claims that he "always follow[s] these steps whenever [he] handcuff[s] an individual." (Id. ¶ 10.)

Field Sergeant Lawrence Santos of the HPD, Officer Sugai's supervisor during the time in question (2003 and 2004), confirmed in his declaration that the HPD conducts such training, stating that the training includes briefings on departmental policy and procedures and covers, among other subjects, the use of force, including "the appropriate use of handcuffs." (Decl. Santos ¶¶ 9-10, 23.) He also stated that the HPD does not condone the use of excessive or unreasonable force by its officers, including needless pain to arrestees, which is made clear to all officers. (Id. ¶¶ 12-13.) Officers are required to use equipment that meets HPD's specifications and, in 2003, inspections were conducted three times a week to confirm that this requirement was being followed, including a specific check of the handcuffs. (Id. ¶ 15.) Officer Santos claimed that he was unaware "of anything that would constitute 'illegal handcuffs,'" and that he does his best to ensure that the officers do not use unreasonable or excessive force under his watch, under the threat of discipline, and that they comply with the HPD's policies and procedures. (Id. ¶¶ 19-20.) He also continually educates officers under his supervision on developments in the law and departmental policies and ensures that they follow his directions. (Id. ¶ 22.)

Other officers, namely, Lieutenant Fabian Loo of the HPD and Major Susan Ballard of the HPD, confirmed the training regimen at the Academy. The

Academy trains all recruits for the HPD police force and the course lasts six and a half months, covering over 1,054 hours of instruction with an emphasis on firearms and the use of force on arrestees. (Decl. Ballard ¶¶ 3-4.) Specifically, Lieutenant Loo and Major Ballard confirmed that, when handcuffing an individual, recruits are taught to inspect the handcuffs visually to make sure that they are not fastened too tightly. (Decl. Loo ¶ 2.) Recruits are also taught to ask the individual whether the handcuffs are too tight; they are taught to double-lock the handcuffs; and they are taught to check the spacing between the handcuffs and the individual's wrists with their pinky fingers and to loosen the handcuffs if necessary if the individual complains that the handcuffs are too tight and circumstances permit. (Decl. Loo ¶¶ 10-13; Decl. Ballard ¶ 6.) The recruit is issued a set of standard handcuffs within the first week of training, which are expected to be used throughout the recruits career. (Decl. Loo ¶¶ 15-16; Decl. Ballard ¶ 7.) The purpose of the handcuff training is to ensure that a suspect cannot escape, while, at the same time, to ensure that injury does not ensue. (Decl. Ballard ¶ 8.) Annual training programs also are taught regarding the subject of use of force, among others. (Decl. Loo ¶ 14; Decl. Ballard ¶ 13-15.) HPD policies require documentation, medical examination, and treatment of arrestees who request or require it, and, along with an early warning tracking system for counseling, retraining, or

disciplining its officers who act inappropriately, a citizen complaint system exists within the HPD. (Decl. Ballard ¶¶ 20-22.)

During the time that Officer Sugai was under Officer Santos's supervision, Officer Santos claims that he "never witnessed [Officer Sugai] use excessive force on a suspect, arrestee, or any other person," nor did he witness him using anything but "standard, department-issued handcuffs." (Santos's Decl. ¶¶ 25, 27.) Officer Santos further states that since the alleged incident occurred, he has not received or heard of any complaints against Officer Sugai. (Id. ¶ 33.) Moreover, Major Ballard reviewed the Academy's transcripts of Officer Sugai, which revealed that Officer Sugai completed 1,120 hours of recruit training credit and that he graduated from the Academy on July 18, 2001. (Decl. Ballard ¶ 11-12.) Officer Sugai also attended annual training every year since graduation. (Id. ¶ 16.)

On September 19, 2005, Plaintiff filed the instant action, pro se, claiming assault and battery and a deprivation of his constitutional rights under 42 U.S.C. § 1983. (Complaint ¶¶ 16, 18, 20.) Specifically, Plaintiff alleged that the unidentified defendants, i.e., the police officer or officers, "unlawfully us[ed] illegal handcuffs and said cuffs were too tight." (Id. ¶ 10.) He further claimed that he was "subdued and assaulted" and that, at some point after his arrest, he

"sustained severe injuries" resulting from one or more of the police officers who arrested and restrained him. (Id. ¶¶ 11-12.) He asserted that the officers "knew or should have known that he needed immediate medical attention for the physical injuries which he sustained." (Id. ¶ 13.) The discovery deadline is April 20, 2007, and the jury trial is set for June 19, 2007. (Docket No. 14.).

On February 20, 2007, the named Defendants filed a Motion for Summary Judgment, arguing that, insofar as HPD is named as a separate party, HPD is not a proper party; there is no evidence to support a claim against the City and County Defendants; Plaintiff's injuries are minimal and noncompensable; and the City and County Defendants cannot be liable for punitive damages. Plaintiff has not filed an opposition.

## STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Porter v. California Dept. of Corrections, 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).

A main purpose of summary judgment is to dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See id. at 323. A moving party without the ultimate burden of persuasion at trial–usually, but not always, the defendant–has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial"and may not rely on the mere allegations in the pleadings. Porter, 419 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers. S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885,

889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties."). "[A]t least some 'significant probative evidence'" must be produced. T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." T.W. Elec. Serv., 809 F.2d at 631. In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party. Porter, 419 F.3d at 891. The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. Id. However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631.

DISCUSSION

Defendants assert that HPD is a not a proper party because it is not sui juris and it has yet to be served; thus, HPD should be dismissed. Defendants also argue that there is no evidence to support a claim against the City and County Defendants because the theory of respondeat superior does not apply under § 1983 to hold the City and County liable for actions of its officers, and Plaintiff has failed to identify a municipal policy or custom that resulted in a violation of his constitutional rights. Defendants also contend that Plaintiff's injuries are minimal, and Plaintiff has not demonstrated that excessive force was used. Defendants further claim that the City and County Defendants cannot be held liable for punitive damages. Defendants did not touch on the state tort claims. Plaintiff did not file an opposition to respond to any of these arguments.

Section 1983 of Title 42 of the U.S. Code states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Section 1983 does not create any substantive rights; rather it is the vehicle whereby plaintiffs can challenge actions by governmental officials."

Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 978 (9th Cir. 2004) (quoting Henderson v. City of Simi Valley, 305 F.3d 1052, 1056 (9th Cir. 2002)) (quotations omitted). To state a § 1983 claim, a "plaintiff must demonstrate a deprivation of a right secured by the Constitution or laws of the United States, and that the defendant acted under color of state law." Kirtley v. Rainey, 326 F.3d 1088, 1092 (9th Cir. 2003) (citing West v. Atkins, 487 U.S. 42, 48 (1988)).

A. HPD is treated as part of the municipality

This Court treats claims against municipalities, such as the City and County of Honolulu, and their respective police departments as claims against the municipalities. See Pourny v. Maui Police Department, County of Maui, 127 F. Supp. 2d 1129, 1143 (D. Haw. 2000) (treating the Maui Police Department and the County of Maui as one party); Tokuhama v. City and County of Honolulu, et al., 751 F. Supp. 1385, 1387-88, 1391-94 (D. Haw. 1989) (reviewing the City and County of Honolulu's liability under § 1983 for the alleged unconstitutionality of HPD's policies and customs); see also Headwaters Forest Defense v. County of Humboldt, et al., 276 F.3d 1125, 1127 (9th Cir. 2002) (treating police departments as part of their respective county or city). Some jurisdictions have found that a city's police department is not a proper party because it does not exist separate and apart from the municipality. See, e.g., Shelby v. City of Atlanta, et al., 578 F.

Supp. 1368, 1370 (N.D. Ga. 1984); Baker v. Willett, et al., 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999). Notwithstanding, in this Court's jurisdiction, where a complaint is brought against a municipality, such as the City and County of Honolulu, it also may be brought against their respective police departments as part of the municipality. Thus, this Court shall analyze all claims against Defendants under the general rubric of municipal liability.

B. Municipal Liability under § 1983

Under § 1983, a municipality will not be liable for the acts of its police officers solely because the officer or officers who allegedly committed the torts were employees of the municipality during the events in question. See Pourny, 127 F. Supp. 2d at 1143; see also Sunn v. City & County of Honolulu, 852 F. Supp. 903, 908 (D. Haw. 1994) ("A municipality cannot be held liable merely for employing a tortfeasor."). Rather, the named Defendants may be held liable only where the alleged unconstitutional acts implement or execute a municipal policy, ordinance, decision, regulation, or custom. See Monell v. Dep't of Social Servs. of City of N.Y., 436 U.S. 658, 690-91 (1978). For liability to attach, this Court must find that such acts were "(1) the direct result of inadequate police training or supervision; (2) the product of an officially adopted policy statement, ordinance, regulation, or decision; or (3) illustrative of a custom which is so

permanent and well settled to constitute a custom or usage with the force of law." Sunn, 852 F. Supp. at 909. "[T]he word 'policy' generally implies a course of action consciously chosen from among various alternatives." Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985). The word custom recognizes situations where the practices of officials are permanent and well settled. See Adickes v. S. H. Kress & Co., 398 U.S. 144, 167-68 (1970).

Here, Plaintiff complains that the police officers unconstitutional arrest, transportation, restraint and incarceration leading to his "bodily injury" is the result of Defendants improper training and supervision of those police officers. (Complaint ¶ 20.) Nonetheless, Plaintiff has alleged no facts in his complaint or in other pleadings that would suggest that Plaintiff's alleged injuries were the result of inadequate police training or supervision; the product of an officially adopted policy statement, ordinance, regulation, or decision; or illustrative of a custom or usage with the force of law. Nor has Plaintiff specified what "severe and permanent physical injuries" he suffered, other than making a vague and conclusory reference to such injuries. (Complaint ¶ 17.) Because Plaintiff did not file an opposition, Plaintiff has not elaborated on or provided further specifics of his claims.

On the other hand, Defendants have provided declarations of three officers, Field Sergeant Santos, Lieutenant Loo and Major Ballard, all of whom attest to the City and HPD's policy of discouraging excessive force and encouraging proper use of handcuffs through Academy and annual training. Specifically, Lieutenant Loo stated HPD's policy of inspecting the handcuffs visually to make sure that they are not fastened too tightly. (Decl. Loo ¶ 2, 10-13.) To prevent the tightening of handcuffs, the recruits are taught to double-lock the handcuffs and to respond to complaints accordingly, when circumstances permit, by checking the spacing with their pinky fingers and loosening the handcuffs if necessary. (Decl. Loo ¶¶ 10-13; Decl. Ballard ¶ 6.) That is what Officer Sugai claims he did here. Additionally, all recruits must graduate from the Academy's extensive training program, covering over 1,054 hours of instruction with an emphasis on firearms and the use of force on arrestees, and attend annual training programs regarding the subject of use of force, among others. (Decl. Loo ¶ 14; Decl. Ballard ¶ 3-4, 13-15.) Major Ballard stated in her declaration that she reviewed the Academy's transcripts of Officer Sugai, which revealed that Officer Sugai completed 1,120 hours of recruit training credit, that he graduated from the Academy on July 18, 2001, and that Officer Sugai attended annual training every year since graduating. (Decl. Ballard ¶ 11-12, 16.) Major Ballard also touched on

HPD's policies of documentation, examination, and treating arrestees for complained-of injuries, and its policy of maintaining an early warning tracking system for counseling, retraining, or disciplining its officers who act inappropriately, as well as maintaining a citizen complaint system. (Decl. Ballard ¶¶ 20-22.)

Notwithstanding, given that Plaintiff is proceeding pro se, the Court has an obligation to construe his Complaint liberally. Bernhardt v. Los Angeles County, 339 F.3d 920, 925 (9th Cir. 2003) ("Courts have a duty to construe pro se pleadings liberally, including pro se motions as well as complaints."). Pro se plaintiffs in a civil rights action must be afforded the benefit of any doubt. Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 623 (9th Cir. 1988). Additionally, "[a] pro se litigant must be given leave to amend his or her complaint unless it is 'absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" Id. (quoting Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987)). "Moreover, before dismissing a pro se civil rights complaint for failure to state a claim, the district court must give the plaintiff a statement of the complaint's deficiencies." Id. Although not detailed in Plaintiff's complaint or discussed in an opposition, Plaintiff alleged that the City and HPD failed to train and to supervise the police officers properly. From Defendants' declarations,

Defendants appear to have provided sufficient training and supervision of the police officers to preclude a claim of municipal liability. This Court shall DISMISS Plaintiff's § 1983 claim WITH LEAVE TO AMEND his complaint within 30 days of the dismissal to provide further details of the HPD and City and County of Honolulu's failure to train and to supervise the police officer or officers who allegedly committed the violations or of an HPD or City custom or policy that condoned use of excessive force through handcuffs or otherwise.

C. Facts Sufficient to Support a Claim

The Ninth Circuit has recognized that excessively tight handcuffing can constitute a Fourth Amendment violation. See, e.g., Wall v. County of Orange, 364 F.3d 1107, 1112 (9th Cir. 2004); LaLonde v. County of Riverside, 204 F.3d 947, 960 (9th Cir. 2000); Alexander v. County of Los Angeles, 64 F.3d 1315, 1322-23 (9th Cir. 1995); Palmer v. Sanderson, 9 F.3d 1433, 1436 (9th Cir. 1993); Hansen v. Black, 885 F.2d 642, 645 (9th Cir. 1989). "The issue of tight handcuffing is usually fact-specific and is likely to turn on the credibility of the witnesses." LaLonde, 204 F.3d at 960. In those cases, the plaintiffs either suffered damage to their wrists as a consequence of the handcuffs or the plaintiffs complained to the officers about the handcuffs being too tight, with other facts possibly leading to more severe results. See Wall, 364 F.3d at 1109-10, 1112;

LaLonde, 204 F.3d at 952, 960; Palmer, 9 F.3d at 1434-36; Hansen, 885 F.2d at 645. Here, the actual injury to Plaintiff's wrists or otherwise is unclear from his complaint. Plaintiff's case may mirror the cases above or those that other district and circuit courts have dismissed for failure to rise to the level of a constitutional violation. See, e.g., Glen v. City of Tyler, et al., 242 F.3d 307, 314 (5th Cir. 2001); Raley v. Fraser, 747 F.2d 287, 289 (5th Cir. 1984); Mladek v. Day, 320 F. Supp. 2d 1373, 1377 (M.D. Ga. 2004); Bovey v. Lafayette, 586 F. Supp. 1460, 1468-69 (N.D. Ill. 1984). Although Plaintiff claimed that he complained to an officer about the handcuffs being "a little bit tight," "kind of tight," or possibly too tight, he did not provide any details in his complaint or in an opposition on the actual injury that he allegedly suffered as a result. Additionally, Plaintiff was handcuffed for what appears to be around five minutes, and Plaintiff admits that Officer Sugai checked the space between his handcuffs and his wrists.

Without knowing the actual injury suffered or any other facts that would suggest excessive use of force, Plaintiff has not alleged facts that would demonstrate that the officer's use of force was objectively unreasonable. Although reasonableness of force generally is a fact-specific inquiry for the jury, "'defendants can still win on summary judgment if the district court concludes after resolving all facts in favor of the plaintiff, that the officer's use of force was

objectively reasonable under the circumstances.'" Alexander, 64 F.3d at 1322 (citing Scott v. Henrich, 39 F.3d 912, 915 (9th Cir.1994)). This Court DISMISSES Plaintiff's § 1983 claim WITH LEAVE TO AMEND his complaint within 30 days of the dismissal to provide further factual allegations of the injuries that he suffered as a result of the alleged unconstitutional acts.

D. Municipal Liability under State Tort Claims

Respondeat superior liability may be available against Defendants for the tortious acts of the police officers under state law. See Tokuhama, 751 F. Supp. at 1394. Still, Plaintiff has failed to provide any facts that would support a claim of assault and battery, for which the City and County of Honolulu and HPD may be liable. See Pourny, 127 F. Supp. 2d at 1146 ("Battery is an unlawful touching of another person without his [or her] consent.") (citing Ozaki v. Ass'n of Apartment Owners, 954 P.2d 652, 668 (Haw. Ct. App.), aff'd in part, rev'd in part on other grounds, 954 P.2d 644 (1998); Mukaida v. Hawaii, 159 F. Supp. 2d 1211, 1223 (D. Haw. 2001) ("A person commits the common law tort of battery if he or she acts with intent to cause a nonconsensual harmful or offensive contact, or apprehension thereof, and the contact occurs."); see also Restatement of Torts (Second) § 21 (defining assault as the intent to cause harmful or offensive contact to another person, or an imminent apprehension of such contact, and the person is

put in such apprehension). "A police officer is entitled to use such force as is justifiable when making an arrest (thereby making such justifiable touching not 'unlawful.'" Pourny, 127 F. Supp. 2d at 1146. Unlike in Pourny, in which the plaintiff alleged that he was dragged across his store and tossed into the police car, Plaintiff has failed to provide any facts that, at this point, would demonstrate excessive force or an unlawful or offensive touching or contact of Plaintiff. See id. at 1146-47. Thus, this Court DISMISSES Plaintiff's claim of assault and battery WITHOUT PREJUDICE.

E. Punitive Damages

Although § 1983 does not permit punitive damages against a municipality, punitive damages are available against an official individually. See Kentucky v. Graham, 473 U.S. 159, 167 fn. 13 (1985). Thus, this Court GRANTS summary judgment for punitive damages against the City and County of Honolulu and the HPD, but punitive damages still may be claimed against the individual officer or officers once named.

CONCLUSION

For the reasons stated above, the Court

(1) DISMISSES Plaintiff's § 1983 claim WITH LEAVE TO AMEND his complaint within 30 days of the dismissal to provide further details of the HPD

and City and County of Honolulu's failure to train and supervise the police officer or officers who allegedly committed the violations or of an HPD or City custom or policy that condoned use of excessive force through handcuffs or otherwise;

(2) DISMISSES Plaintiff's § 1983 claim WITH LEAVE TO AMEND his complaint within 30 days of the dismissal to provide further factual allegations of the injuries that he suffered as a result of the alleged unconstitutional acts.

(3) DISMISSES Plaintiff's claim of assault and battery WITHOUT PREJUDICE.

(4) GRANTS summary judgment for punitive damages against the County and City of Honolulu and the HPD, but not to the individual officer or officers once named.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 12, 2007.




David Alan Ezra
United States District Judge

Solomon S. Hoe III vs. City and County of Honolulu, et al., Civil No. 05-00602 DAE-LEK; ORDER DISMISSING PLAINTIFF'S § 1983 CLAIM WITH LEAVE TO AMEND; DISMISSING PLAINTIFF'S ASSAULT AND BATTERY CLAIM WITHOUT PREJUDICE; AND GRANTING SUMMARY JUDGMENT ON PUNITIVE DAMAGES AGAINST THE NAMED DEFENDANTS